# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WISCONSIN

Civil Action No: **3:16-cv-00662**

SCOTT SMITH,

Plaintiff,
v.

HALLBECK FARMS LLC, a Wisconsin limited liability company; and
BADGER HOSPITALITY, INC., a Wisconsin business corporation

Defendants.

---

## COMPLAINT

---

Plaintiff Scott Smith, by and through his attorneys, Browne Law LLC, as his complaint against the Defendants, Hallbeck Farms LLC., a Wisconsin limited liability company; and Badger Hospitality, Inc., a Wisconsin business corporation; alleges and avers violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq*. ("ADA") and its implementing regulations, as follows:

## PARTIES

1.     Plaintiff Scott Smith is a resident of the city of Burnsville, Minnesota. Plaintiff Smith suffers from, and all times relevant hereto has suffered from, a legal disability as defined by the

ADA, 42 U.S.C. § 12102(2). Plaintiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq.*

2.       As a person with a disability, Plaintiff Smith has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

3.       Defendant Hallbeck Farms LLC, is a Wisconsin limited liability company authorized to do business in the State of Wisconsin, with a principal place of business located at 2410 Gateway Court, Hudson, WI 54016.

4.       Defendant Hallbeck Farms LLC is the owner and lessor of the real property and improvements which are the subject of this action, the restaurant and bar known as Green Mill, located at the street address of 2410 Gateway Court, Hudson, WI 54016 ("Green Mill"), a place of public accommodation within the meaning of the ADA.

5.       Defendant Badger Hospitality, Inc., is a Wisconsin business corporation authorized to do business in the State of Wisconsin, with a principal place of business located at 2410 Gateway Court, Hudson, WI 54016.

6.       Defendant Badger Hospitality, Inc. is the operator and lessee of the real property and improvements which are the subject of this action, the restaurant and bar known as Green Mill, located at the street address of 2410 Gateway Court, Hudson, WI 54016, a place of public accommodation within the meaning of the ADA.

## JURISDICTION AND VENUE

7.       Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343(a)(3).  This action includes federal law claims brought pursuant to Title III of the Americans with Disabilities Act,

42 U.S.C. §§ 12181–12189.   The Court has the jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57.

8.      Venue in this judicial district is proper because Defendants are located and transact business within this judicial district and have sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## NATURE OF THE CASE

9.      Plaintiff Smith brings this civil rights action against Defendants for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, persons with disabilities.   Defendants have failed to remove architectural barriers in the Green Mill, even though such removal is readily achievable.

10.     The violations alleged in this Complaint occurred at Green Mill.

11.     Defendants' failure to provide equal access to Green Mill violates the mandates of the ADA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

12.     Defendants' conduct constitutes an ongoing and continuous violation of the law.

13.     Accordingly, Plaintiff Smith seeks a declaration that Defendants' facilities violate federal law; and an injunction requiring Defendants to make modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities.   Plaintiff Smith further requests that the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendants continue to comply with the relevant requirements of the ADA.

## FACTUAL BACKGROUND

14.     On August 22, 2016, Plaintiff Smith arrived at the Green Mill.  Plaintiff Smith was in town travelling for leisure.

15.     When Plaintiff Smith arrived at the Green Mill he found only two parking spaces in the customer parking lot reserved as accessible parking spaces, even though the parking lot had approximately 91 total parking spaces. Both spaces lacked an adjacent access aisle. A photograph in Exhibit A to this Complaint depicts these two parking spaces in the Green Mill customer parking lot.

16.     In light of the architectural barriers at Green Mill, Plaintiff Smith was forced to find another place to eat lunch. Plaintiff Smith is deterred from visiting Green Mill in the future. Plaintiff Smith intends to return to Green Mill to patronize the facility, but these architectural barriers deter him from doing so. He plans to return and patronize Green Mill when he learns that the premises have been made fully accessible to persons who use wheelchairs for mobility.

17.     Plaintiff Smith attempted to access Defendants' premises, but could not do so independently on a full and equal basis because of his disabilities, due to the physical barriers to access and violations of the ADA that exist at Defendants' premises.  As a result of Defendants' non-compliance with the ADA, Plaintiff Smith cannot independently access the facilities and/or is excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

4

18.     Plaintiff Smith intends to return to Green Mill on or before Memorial Day weekend 2017 (May 29, 2017). Plaintiff Smith intends to return with his roommate and discussed returning to the area in the spring when the weather is nice.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

19.     On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

a.   Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

b.   Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

c.   Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

d.   Individuals with disabilities continually encounter various forms of discrimination; and

e.   The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9)

5

20.     Congress explicitly stated that the purpose of the ADA was to:

    a.   Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

    b.   Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

    c.   Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

    42 U.S.C. § 12101(b)(1), (2), (4).

21.     Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities.  42 U.S.C. § 12181–89.

22.     The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements.  The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less).  42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

23.     Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36.  Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access

Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

24.     In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

25.     In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise the 1991 ADAAG.

26.     The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

27.     On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

28.     On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

29.     The extended process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

30.     Defendants have discriminated against Plaintiff Smith on the basis of his disability by failing to comply with the requirements of the ADA and the ADAAG with regard to Green Mill. A specific, though not exclusive, list of unlawful physical barriers and ADA violations present at Green Mill which limit the ability of persons in wheelchairs to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

a.   The Green Mill customer parking lot had approximately 91 total parking spaces but had only 2 parking spaces reserved as accessible parking spaces, rather than the required 4, in violation of ADAAG 208.2. Parking in a distant parking space or in a parking space that lacks an adjacent access aisle increases the likelihood that Plaintiff would be forced to travel a long distance to in the parking lot, creating the chance of being struck by a vehicle or being trapped outside his vehicle in the event someone parked next to his car.

b.   The two parking spaces reserved as accessible parking spaces lacked adjacent access aisles, in violation of ADAAG 208.2 and 502.2. Parking in a space that does not have an access aisle is dangerous for Plaintiff Smith, because vehicles could park in the spaces directly adjacent to his car while he patronizes Green Mill. Plaintiff Smith's car uses a car-top wheelchair carrier, and this would be impossible to operate with a vehicle parked in the adjacent parking space, where Plaintiff Smith would be trapped outside his car until the obstructing vehicle left the space.

c.   The two parking spaces reserved as accessible parking spaces had faded markings.  The international symbol accessibility was faded, making it more likely an able-bodied person would park in the paces reserved as accessible parking spaces.

31.    The above listing is not to be considered all-inclusive of the barriers and violations of the ADA encountered by Plaintiff Smith or which exist at Green Mill.  To qualify as an accessible parking space it must be located on the shortest accessible route, marked by appropriate signage, flanked by an access aisle, and comply with sloping requirements. ADAAG 206, 208, 402, 403, 405, 406, and 502.

32.    In order to fully remedy the discriminatory conditions, Plaintiff Smith requires an inspection of Green Mill in order to photograph and measure all such barriers to access and violations of the ADA and the ADAAG.

33.    Compliance with the ADA standards and the ADAAG is required by 42 U.S.C § 12182(b)(2)(A)(iv) because removal of architectural barriers is readily achievable.  Compliance with the ADA standards and the ADAAG is readily achievable by Defendants due to the lack of difficulty and low cost of remedying the above-listed barriers.  Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable", including, but not limited to, creating accessible parking spaces. 28 C.F.R. § 36.304(b).

34.    Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve

accessibility.  Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000.  *See* ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

35.     As a person with a disability, Plaintiff Smith has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

36.     Without injunctive relief, Defendants' failure to remove accessibility barriers will continue to cause injury to Plaintiff Smith, who will continue to be unable to independently access Green Mill and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of his rights under the ADA.

## FIRST CAUSE OF ACTION

### (Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*)

37.     The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

38.     Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

39.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services,

facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

40.     Defendants have discriminated against Plaintiff Smith and others in that they failed to make their place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder, including the ADAAG, as described above.  Plaintiff Smith has been denied full and equal access to Green Mill and/or has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

41.     Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. Defendants' violations of the ADA and ADAAG are ongoing.

42.     Defendants have failed to remove architectural barriers to full and equal access by Plaintiff Smith, even though removing the barriers is readily achievable.

43.     Defendants have failed to maintain accessible features in violation of the ADA and ADAAG.

44.     Plaintiff Smith plans to visit Green Mill again in the near future. Plaintiff Smith is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm upon his planned return visit to Green Mill unless and until Defendants are required to remove the physical barriers to access and ADA violations that exist at Defendants' place of public accommodation, including those set forth specifically herein.

45.     This Court has authority under 42 U.S.C. § 12188 to grant Plaintiff Smith injunctive relief, including an order requiring Defendants to make Green Mill readily accessible to and

independently usable by individuals with disabilities to the extent required by the ADA and ADAAG, and/or to close Green Mill until such time as Defendants cure the access barriers.

46.   Plaintiff Smith has retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendants, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

WHEREFORE, Plaintiff Smith prays that the Court enter judgment in his favor and against Defendants as follows:

a.   That the Court issue a Declaratory Judgment that determines that Defendants' facilities, at the commencement of the instant suit, are in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations including the ADAAG.

b.   That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendants from continuing their discriminatory practices; including an order directing Defendants to make all readily achievable alterations to their facilities so as to remove physical barriers to access and make its facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA; and also including an order requiring Defendants to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

c.   That the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendants continue to comply with the relevant requirements of the ADA.

d.  That the Court award Plaintiff Smith his reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, or as otherwise provided by law; and

e.  That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA.

Dated October 3, 2016.

Respectfully submitted,

/s/ Padraigin L. Browne
Padraigin L. Browne (MN Bar # 389962)
3749 Sunbury Alcove
Woodbury, MN 55125
E-mail: paddy@brownelawllc.com
Phone: (612) 293-4805

Attorney for Plaintiff
Scott Smith